YARBOROUGH *v.* MILLER *et al.*

BLANDFORD, J.—The court below did not abuse its discretion in refusing to grant an injunction in this case; and the judgment is

February 10, 1890.                                                    *Affirmed.*

Petition for injunction. Before Judge GUSTIN. Bibb superior court. May term, 1889.

On or about December 1, 1885, J. D. Yarborough and his brother, G. W., made to J. H. Tallman a promissory note for $700, and to secure it made a mortgage on 385 acres of land described therein. This note and mortgage were transferred by Tallman to L. Miller, who, in May, 1888, proceeded to foreclose the mortgage and caused the Yarboroughs to be served with rule *nisi*. The rule was made absolute on March 29, 1889, the land advertised to be sold and, on the first Tuesday in June, sold by the sheriff to Miller for $600. On July 2, J. D. Yarborough brought his petition for injunction to restrain the sheriff from dispossessing him and from delivering to Miller a deed to the land, and for other relief; alleging that, after having paid part of the interest on the loan, he discovered that Tallman had deducted $95 above legal interest from the sum to be loaned him, upon which he neglected to pay the interest notes; that on being served with the rule *nisi* for foreclosure, he obtained from the agents of Miller promises as to the settlement of the amount due, on condition that he would not defend, but in disregard of them and in fraud of petitioner, the judgment making the rule absolute was taken for the full amount of principal and interest not due, the land levied on and advertised for sale, and the sale made, all without any notice to him; that the land was worth $2,000, petitioner's interest being half, and he had in good faith planted on it his crop which was growing and on which he and his family were dependent for support, and they would be ruined if dispossessed; that pending the foreclosure proceeding (on January 4, 1889), without the knowledge or consent of petitioner, his brother, G. W., with the consent of Miller, sold his share in the mortgaged premises to one McElmurray, and with a part ($459.27) of the money thus obtained procured from Miller's attorney a release to McElmurray of all the interst of G. W.

(half), dated prior to the judgment of foreclosure, which, though taken against petitioner and G. W., was not intended to operate against the latter, this being an effort to conceal the release, and by so doing Miller changed the contract and released petitioner as well as his joint obligor ; that though the note and mortgage were executed jointly, petitioner did not receive any money and was really a surety, of which fact Miller's agents had notice; and that in the $600 bid by Miller at the sale was included the amount paid by G. W., the balance being credited on the alleged debt.

In behalf of Miller, an answer was filed and verified by his attorney, alleging that Miller knew nothing of the dealings between Tallman and petitioner, of the charges made or of the amount reserved by Tallman ; that Tallman applied to him to lend petitioner $700 at the legal rate of interest, which he did, taking the note and mortgage ; that the proceedings to foreclose were not begun before the note was due ; that his attorney gave petitioner notice, more than a week before the judgment of foreclosure was taken, that this would be done on the day that it was done unless the note was paid by that time ; that Miller never promised not to make the rule absolute; but gave petitioner all the time he could to raise the money ; that petitioner never claimed or intimated to Miller or his agents or attorney that he had any defence; that the judgment was for only the principal and legal interest due on the note ; that the reception by his attorney from G. W. Yarborough of half the amount due on the note was with the knowledge and consent of petitioner but without the authority of Miller ; and that he did not desire the land, and if petitioner would pay him the amount due on the note he would reconvey it to him.

At the hearing, the affidavits of petitioner and his wife in support of the petition were read. Among

other things, he deposed that in June, 1888, he went to Lawton & Smith, agents of Miller, and applied for a new loan with which to settle his part of the debt due to Miller, but Smith would not allow him to pay only his part, saying that this would release the other joint obligor; that he understood from these negotiations that Miller would give him due notice before making the rule absolute, so as to allow him to make another effort to settle his debt, but he never received any notice at any time after the service of the rule *nisi*; that he signed the note to pay a debt of his father and brother, Lawton knowing this and paying the money on the debt, and deponent getting none of it; that he expected to make his brother pay nearly all the loan, the larger part of which was used to pay his indebtedness, and asked Lawton (who had stated that he thought G. W. would pay his part of the note) to let him (deponent) know when G. W. expected to pay; that he was never informed of the release and sale to McElmurray, his brother leaving the State about the same time; that he relied on his brother's part of the land being bound for the debt, and it was ample to pay the same; that McElmurray is in possession; etc.

The testimony for Miller, by the affidavits of his attorney and of Smith and the sheriff, tended to show as follows: At the time of receiving the money from McElmurray for G. W. Yarborough, the attorney stated to all the parties, including petitioner, that he would receive it only on condition that petitioner paid his part of the debt, and that unless this were done the money would be returned to McElmurray and the mortgage would be foreclosed; that he has it now, to be returned to McElmurray when called for; that he told petitioner in person, about a week before judgment of foreclosure, that he could give him no more time but would have to make the rule absolute, as the court was about

to adjourn, and petitioner never intimated that he had any defence to the foreclosure; that he was fully apprised of all the facts as to the payment by his brother, and consented thereto; that on January 1, 1889, petitioner made a deed to one Sprague to a portion of the land to secure a loan of $500, and delivered it to Smith for the purpose of turning it over to Sprague and receiving the money, which was then to be paid to Miller in settlement of petitioner's part of the debt due him, but the deed was not delivered to Sprague, as this was not to be done until petitioner had removed from the property certain liens, the existence of which he had concealed from Smith at the time of executing the deed; and that petitioner talked with the sheriff about the levy and advertisement of the property before the sale, and after the sale spoke of getting an injunction to enjoin it as well as the execution and delivery of the sheriff's deed.

The injunction was denied. The plaintiff assigned error, because, the facts being conflicting, the judge should not have weighed the testimony and refused the injunction pending a trial before a jury, such refusal working irreparable injury to petitioner, while no such injury would have resulted to the defendant by a grant of the injunction; and because such refusal was contrary to law, evidence and equity, and was an abuse of discretion.

M. G. BAYNE and ROBERT HODGES, for plaintiff.
GUERRY & HALL, for defendants.